Exhibit B - Complaint

1  **LAKESHORE LAW CENTER**
   **Jeffrey Wilens, Esq. (State Bar No. 120371)**
2  18340 Yorba Linda Blvd., Suite 107-610
3  Yorba Linda, CA 92886
4  714-854-7205
   714-854-7206 (fax)
5  jeff@lakeshorelaw.org

6
   **Attorneys for Plaintiffs**
7

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange
**11/15/2017** at 02:26:08 PM
Clerk of the Superior Court
By Isia Vazquez, Deputy Clerk

8  **ORANGE COUNTY SUPERIOR COURT, STATE OF CALIFORNIA**

9  **700 Civic Center Drive West, Santa Ana, California 92702**

| | |
|---|---|
| 10 ASHLEY ABRAMSON, | Case No. 30-2017-00955982-CU-BT-CJC |
| KIMBERLY DAWN ALVAREZ, | Assigned for All Purposes to: |
| 11 EDWIN JEFFREY AMADOR, | Hon. Judge Glenn Salter |
| 12 SHAWNA MICHELLE ANTRIM, | Dept. |
| RONNELL ARETA, | Complaint Filed: |
| 13 JERAD RUSSELL BRANNEN, | |
| ANTHONY CLATE, | **COMPLAINT FOR:** |
| 14 JAIME LEA DERDERIAN, | **1. NEGLIGENCE** |
| TAMMY TONETTE DE VILLE, | **2. VIOLATION OF CONSUMER CREDIT REPORTING ACT** |
| 15 VIOLET GALLO, | |
| 16 ROSEMARY GONZALEZ, | **3. VIOLATION OF CONSUMER RECORDS ACT** |
| LAURA J. GOODE, | |
| 17 KASHMIR A. JACKSON, | **4. CONVERSION** |
| DAVID EARL KERT, | |
| 18 ALEXANDRA ELIZABETH LYNCH, | |
| PAULA MAYWEATHER, | |
| 19 ALYSSA MCARDLE, | |
| 20 MAHRI MOLLAIE, | |
| TIEN PHI NGUYEN, | |
| 21 ANNA PACHECO, | |
| JUAN PACHECO, | |
| 22 CHARLES MILLARD PORTER, | |
| STEVEN ROBERT PRESCOTT, | |
| 23 KEVIN W. RAINBOLT, | |
| 24 RONANN MARIE ROBELLO, | |
| NICK RODRIGUEZ, | |
| 25 TANYA MICHELLE RUBIO, | |
| KRISTINA RUIDAS-BENE, | |
| 26 HONG SCHUR, | |
| 27 W. CRAIG SCHUR, | |
| JULIANNE SEKIYA, | |

28

1
COMPLAINT

| | |
|---|---|
| SHARON SHEPARD,<br>VALERIE ELIZABETH SHERRIFF,<br>AMETRIUS V. SIDNEY,<br>TRINA MARIE SISK,<br>TRAVIS QUINTIN SMITH,<br>RYAN SPIKING,<br>DAPHNE STEWART,<br>LEANNE S. STEWART,<br>RYAN PATRICK STUDER,<br>KAIA VILBERG,<br>RETHA PEARL WALKER,<br>OLIVER WARE, JR.,<br>ALLANNA WARREN,<br>GARY WILENS,<br>CORY EUGENE WILSON,<br>VALECIA WRIGHT,<br>MARTIN ZAMORA,<br>NICOLE ZELEZNICK,<br>MARK ZELEZNICK,<br><br>      Plaintiffs,<br><br>      v.<br><br>EQUIFAX INC., and Does 1 through 100 Inclusive,<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Plaintiffs allege as follows:

## **PARTIES**

1. Plaintiffs are individuals, competent adults and residents of the State of California.

2. Plaintiffs are informed and believe, and thereupon allege, that defendant EQUIFAX, INC., is now, and at all times mentioned in this Complaint was, a corporation based in Atlanta, Georgia and doing business in the State of California and throughout the United States.

3. Plaintiffs do not know the true names or capacities of the Defendants sued herein as DOES 1 through 100 inclusive, and therefore sues these Defendants by such fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe, and thereon allege, that each

of these fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiffs' damages as herein alleged were proximately caused by those defendants. Each reference in this complaint to "Defendant" or "Defendants" or to a specifically named defendant refers also to all defendants sued under fictitious names.

4. Plaintiffs are informed and believe, and thereon allege, that at all times herein mentioned each of the Defendants, including all Defendants sued under fictitious names, and each of the persons who are not parties to this action but are identified by name or otherwise throughout this complaint, was the alter ego of each of the remaining defendants, was the successor in interest or predecessor in interest, and was the agent and employee of each of the remaining defendants and in doing the things herein alleged was acting within the course and scope of this agency and employment.

**FIRST CAUSE OF ACTION FOR NEGLIGENCE AGAINST ALL DEFENDANTS**

5. Plaintiffs incorporate in this cause of action the allegations contained in paragraphs 1 through 4, inclusive.

6. Equifax is one of the three largest consumer reporting agencies in the United States. Equifax has over $3 billion in annual revenue, and its common stock is traded on the New York Stock Exchange.

7. Equifax gathers sensitive personal information about hundreds of millions of Americans, organizes and collates that data into credit files, stores it on its own servers and sells or distributes reports based on that information.

8. Equifax's consumer credit files include: the individuals' married and maiden names, current and past addresses, dates of birth, social security numbers, telephone numbers, and in some cases drivers' license information. The credit files also include credit account information (tradelines), including the creditor's name, type of account, date the account was opened, payment history, credit limit, and balance; credit inquiry information, including credit applications; and public-record

information, including liens, judgments, and bankruptcy filings. Sometimes the name of the business on the tradeline may disclose sensitive information about the consumer, as would be the case with a health care provider (a cancer center, a psychiatric facility or a drug rehabilitation facility, for example).

9. On September 7, 2017, Equifax disclosed for the first time that between March 2017 (originally it claimed the breach started in May 2017) and July 2017, Equifax allowed unauthorized third persons to access its database and steal personal information belonging to at least 143 million Americans, including the named Plaintiffs.

10. The Plaintiffs' personal information that was stolen included that listed in paragraph 8.

11. The stolen information has been distributed through a global network commonly used by criminals called "the dark web."

12. Plaintiffs have been identified by Equifax as persons whose personal information was released to the unauthorized persons.

13. Equifax owed a duty to Plaintiffs to keep their confidential information in Defendant's possession safe from disclosure to unauthorized third parties.

14. Equifax breached this duty of care by failing to exercise due diligence in the hiring, training and supervision of its employees who were entrusted with Plaintiffs' confidential information, by failing to take and maintain adequate computer security measures to protect this confidential information from unauthorized access, and by delaying more than six weeks in disclosing the breach to affected consumers.

15. Although Equifax has not released all details pertaining to the "hacking" of its database, it appears the intruders exploited a software application called Apache Struts. The potential vulnerability of the Apache Strut software was no secret. Security researchers with Cisco Systems Inc. warned in March 2017 that a flaw in the Apache Struts software was being exploited in a "high number" of cyber-attacks. Despite this warning, Equifax continued to use the software. And Equifax was reportedly using an outdated version of Apache Struts at the time of the data breach.

16. The sensitive personal and financial information compromised in this breach is extremely valuable to thieves and hackers. These criminals have gained access to complete profiles of individuals' personal and financial information. They can then use these data sets to steal the identities of the consumers whose information has been compromised or sell it to others who plan to do so. The identity thieves can assume these consumers' identities (or create entirely new identities from scratch) to make transactions or purchases, open credit or bank accounts, apply for medical services, apply for jobs, apply for loans, forge checks, commit immigration fraud, obtain a driver's license in the member's or customer's name, obtain government benefits, or file a fraudulent tax return.

17. They can also attempt to access the consumers' existing bank and brokerage accounts by posing as the consumer during a phone conversation to "reset" the password or change the customer's mailing address or email address.

18. When identity thieves fraudulently use a victim's personal information, the victim frequently suffers financial consequences. A 2014 Department of Justice report on identity theft reported that 65% of identity theft victims experienced direct or indirect financial losses. When sensitive personal information is compromised, consumers must exercise constant vigilance on their financial and personal records to ensure that fraudulent activity has not occurred. Consumers are forced to spend additional time monitoring their credit and finances as well as dealing with any potentially fraudulent activity. Consumers also face significant emotional distress after theft of their identity. The fear of financial harm can cause significant stress and anxiety for many consumers. According to the Department of Justice, an estimated 36% of identity theft victims experienced moderate or severe emotional distress.

19. As a direct and proximate result of the aforementioned negligent conduct by Equifax, Plaintiffs sustained actual damages, including economic loss and emotional distress, in an amount according to proof.

20. Each of the Plaintiffs has experienced substantial and ongoing emotional distress, which has sometimes manifested in physical symptoms, as a result of the data breach.

21. Each of the Plaintiffs has expended time and effort and incidental costs in an effort to mitigate the harm by researching and taking steps to ascertain whether his or her personal information has been used to commit identity theft, by placing security freezes or removing freezes on his or her credit reports, and will need to continue to do so for the foreseeable future.

**SECOND CAUSE OF ACTION FOR VIOLATION OF CONSUMER CREDIT REPORTING ACT AGAINST ALL DEFENDANTS**

22. Plaintiffs incorporate in this cause of action the allegations contained in paragraphs 1 through 21, inclusive.

23. The California Consumer Reporting Agencies Act (CCRAA), Civil Code § 1785 et. seq., regulated consumer credit reporting agencies such as Equifax.

24. A "consumer credit report" is any type of communication of any information from a consumer file by a consumer reporting agency that bears on a "consumer's credit worthiness, credit standing, or credit capacity, which is used or is expected to be used, or collected in whole or in part, for the purpose of serving as a factor in establishing the consumer's eligibility for: (1) credit to be used primarily for personal, family, or household purposes, or (2) employment purposes, or (3) hiring of a dwelling unit, as defined in subdivision (c) of Section 1940, or (4) other purposes authorized in Section 1785.11."

25. Civil Code § 1785.11 provides that a consumer credit report can only be furnished to another person with written consent of the consumer, pursuant to court order, or when the other person "(A) Intends to use the information in connection with a credit transaction, or entering or enforcing an order of a court of competent jurisdiction for support, involving the consumer as to whom the information is to be

furnished and involving the extension of credit to, or review or collection of an account of, the consumer; or (B) Intends to use the information for employment purposes; or (C) Intends to use the information in connection with the underwriting of insurance involving the consumer, or for insurance claims settlements; or (D) Intends to use the information in connection with a determination of the consumer's eligibility for a license or other benefit granted by a governmental instrumentality required by law to consider the applicant's financial responsibility or status; or (E) Intends to use the information in connection with the hiring of a dwelling unit, as defined in subdivision (c) of Section 1940; or (F) Otherwise has a legitimate business need for the information in connection with a business transaction involving the consumer.

26. As previously alleged, Equifax (at a minimum) negligently "communicated" information from Plaintiffs' consumer files to unauthorized third parties. The information that was communicated was the type that was collected for purposes of establishing the consumer's eligibility for personal credit, employment or to rent a dwelling. When Equifax communicated this information to the unauthorized third parties, it furnished a "report" for purposes of Civil Code § 1785.11.

27. None of the Plaintiffs consented to disclosure of their consumer file to the unauthorized third parties nor was there any court order authorizing that disclosure, nor did the third parties have any of the legitimate purposes specified in § 1785.11 (a) through (f). Accordingly, Equifax violated Civil Code § 1785.11.

28. Plaintiffs are informed and believe and thereupon allege that Equifax was consciously aware of a high probability that its database was vulnerable to the data breach that occurred but intentionally failed to take steps to remove that vulnerability due to the high cost of taking such steps. Hence, as an alternative to the negligence theory, it alleged that Equifax willfully violated the CCRAA.

29. As a proximate and direct result of Equifax's violation of the CCRAA, Plaintiffs suffered actual damages including economic and general damages.

30. Pursuant to Civil Code § 1785.31(a)(1), in the case of a negligent violation, Plaintiffs are entitled to recover "actual damages, including court costs, loss of wages, attorney's fees and, when applicable, pain and suffering." In this context, the term "attorney's fees" refers to such fees incurred to address the violation independently of the fees incurred in prosecuting this lawsuit.

31. In addition, pursuant to Civil Code § 1785.31(d), Plaintiffs are entitled to recover their attorney's fees incurred in prosecuting this action.

32. Finally, pursuant to Civil Code § 1785.31(a)(2)(B), inasmuch as Equifax willfully violated the CCRAA, Plaintiffs are entitled to recover punitive damages of not less than one hundred dollars ($100) nor more than five thousand dollars ($5,000) for each violation as the court deems proper, in addition to the relief provided for negligent violations.

## THIRD CAUSE OF ACTION FOR VIOLATION OF CONSUMER RECORDS ACT AGAINST ALL DEFENDANTS

33. Plaintiffs incorporate in this cause of action the allegations contained in paragraphs 1 through 32, inclusive.

34. Civil Code § 1798.81.5, the Consumer Records Act (CRA), provides that "a business that owns, licenses, or maintains personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

35. Equifax was a business subject to the foregoing provision inasmuch as it owned and maintained personal information about California residents (including Plaintiffs).

36. For purposes of the Consumer Records Act, and as specified in Civil Code § 1798.80(d), "personal information" includes the information disclosed by Equifax in the data breach.

37. As a direct and proximate result of the violation of the Consumer Records Act,

Equifax is liable to Plaintiffs for all "actual damages" suffered by Plaintiffs including special and general damages as pled above.

38. In addition, because Equifax's conscious and knowing reckless disregard in the handling of Plaintiffs' personal information was so extreme as to constitute malice, Plaintiffs are entitled to recovery of exemplary or punitive damages.

### FOURTH CAUSE OF ACTION FOR CONVERSION AGAINST ALL DEFENDANTS

39. Plaintiffs incorporate in this cause of action the allegations contained in paragraphs 1 through 38, inclusive.

40. Prior to the aforementioned data breach, Plaintiffs were in possession, had the right to immediate possession, and were the owners with right to possession of certain intangible personal property—namely, their personal identifying information entrusted to Equifax including their names, addresses, dates of birth, social security numbers, and financial history.

41. As previously alleged, Equifax permitted one or more unknown parties, their agents or employees to access and store Plaintiffs' personal identifying information in the normal course of their duties. It was reasonably foreseeable to Defendant that an agent or employee given this level of access, might misuse that information for personal gain or might fail to store the information in a secure manner. Defendant was aware that persons given similar access and responsibilities had misused or mishandled such information in the past either at Defendant's companies or at other companies known to Defendant.

42. In permitting unauthorized persons to access Plaintiffs' personal identifying information, Equifax exercised ownership and control over the property in a manner inconsistent with Plaintiffs' property rights.

43. As a direct and proximate result of the aforementioned acts of conversion committed by Equifax, Plaintiffs sustained actual damages, including economic loss and

emotional distress as set forth previously, in an amount according to proof.

44. In addition, because Equifax's conscious and knowing reckless disregard in the handling of Plaintiffs' personal information was so extreme as to constitute malice, Plaintiffs are entitled to recovery of exemplary or punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment on all causes of action against Defendant as follows:

1. For compensatory damages on the first, second, third and fourth causes of action;
2. For punitive damages in an amount appropriate to punish Defendants for their wrongful conduct and set an example for others;
3. For interest on the sum of money awarded as damages;
4. For reasonable attorney's fees pursuant to Civil Code § 1785.31 (d), pursuant to the Private Attorney General doctrine in Code of Civil Procedure § 1021.5, pursuant to the "common fund" doctrine, and pursuant to the "substantial benefit" doctrine.
5. For costs of suit incurred herein; and
6. For such other and further relief as the court may deem proper.

DATED: November 15, 2017

Respectfully submitted,

By *Jeffrey Wilens*

JEFFREY WILENS
Attorney for Plaintiff